UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL ARROYO JR., <br> Plaintiff, <br> v. <br> SAMEER ABDO ALDABASHI, et al., <br> Defendants. | Case No. 16-cv-06181-JCS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 58 |

## I. INTRODUCTION

Plaintiff Rafael Arroyo, Jr. brought this action under the federal Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act against Defendants Sameer Aldabashi (in his capacity as trustee of the Kassim S. Aldabashi Revocable Trust) and Saleh and Brothers Corporation (the "Corporation") for failure to provide a parking space able to accommodate Arroyo's wheelchair van at Defendants' store. After counsel for Defendants withdrew, the Court issued an order to show cause why Defendants' default should not be entered, and the Clerk entered their default on July 24, 2018. Arroyo now moves for default judgment. The Court held a hearing on October 5, 2018. For the reasons discussed below, Arroyo's motion is GRANTED as to his claim for damages under the Unruh Act, but DENIED as to his claim for injunctive relief under the ADA.[1]

## II. BACKGROUND

### A. Allegations of the Complaint

Arroyo alleges that Defendant Aldabashi owns property at 675 98th Street, Oakland, California and that the Corporation owns the Saleh Smoke House and Market (the "Store") located

---

[1] Prior to Defendants' default, all parties consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

1 at that property. Compl. (dkt. 1) ¶¶ 2–4. Arroyo is paraplegic and uses a wheelchair for mobility. *Id.* ¶ 1. He regularly travels to Northern California during the fall to attend Oakland Raiders football games, for which he has season tickets. *Id.* ¶ 23. Arroyo would like to patronize the Store when he attends football games because it is conveniently located. *See id.* ¶¶ 24–25.

Arroyo visited the Store in October of 2016 to shop. *Id.* ¶ 10. Although the Store provides parking spaces for its patrons, and had three parking spaces marked as reserved for customers with disabilities, none of the parking spaces complied with the ADA Accessibility Guidelines (the "Guidelines"). *Id.* ¶¶ 12–13, 15, 19. Arroyo alleges that two of the marked parking spaces did not have access aisles next to them, and the third marked space had an access aisle that was only 47 inches wide, which is narrower than the Guidelines require. *Id.* ¶¶ 16–17. Arroyo was deterred from shopping at the Store. *Id.* ¶ 28.

Arroyo alleges that Defendants have no plan to provide accessible parking spaces, but could readily do so. *Id.* ¶¶ 21, 27. He asserts claims for violation of the ADA and violation of California's Unruh Civil Rights Act. *Id.* ¶¶ 31–40.

### B. Declaration of Rafael Arroyo, Jr.

Arroyo's declaration includes many of the same factual assertions as his complaint. *See generally* Arroyo Decl. (dkt. 58-5). In addition, Arroyo states that he drives a specially modified van that deploys a ramp so that he can enter and exit the vehicle in his wheelchair. *Id.* ¶ 3. Arroyo "need[s] the full 'van accessible' access aisle in order to safely transfer to and from [his] van." *Id.* He no longer attempts to use non-compliant parking spaces lacking access aisles because in the past he has been injured or trapped outside of his van when he used such parking spaces. *Id.* ¶ 4.

When Arroyo visited the Store on October 8, 2016, he found "no accessible parking spaces with a van access aisle," and therefore "could not safely park." *Id.* ¶¶ 5–6. Arroyo states that he has also been deterred from visiting the Store on other occasions, including when he was in the same area about a week after his first visit, and that he would like to visit the Store if it provides accessible parking in the future. *Id.* ¶¶ 8–9.

### C. Declaration of Tim Wegman

Tim Wegman, an investigator hired by Arroyo's attorneys, visited the Store on October 12,

2016, four days after Arroyo's visit. *See* Wegman Decl. (dkt. 58-6) ¶ 2. Wegman states that of twenty-one parking spaces at the Store, two were marked for disabled customers with the international symbol of accessibility but had no access aisles, and a third parking space had a narrow access aisle that Wegman measured to be 47 inches wide. *Id.* ¶¶ 3–4. Wegman measured the parking space itself to be 120 inches wide. *Id.* ¶ 4. Wegman attaches photographs of the parking lot, which suggest that he might not have correctly measured from centerlines of the marking lines in the parking lot (or included the full width of the line for the side of the aisle not adjacent to a parking space), and thus might have underreported the width of spaces and aisles by one or two inches. *See id.* ¶ 5 & Ex. 4; 36 C.F.R. Pt. 1191, App. B, § 502.1. Arroyo states in his declaration that Wegman's photographs accurately depict the parking lot at the Store. Arroyo Decl. ¶ 7.

### D. Declaration of Russell Handy

Arroyo's attorney Russell Handy, from the Center for Disability Access, submits a declaration detailing the steps that Arroyo's counsel took to determine that Defendants' owned the Store, the time that counsel devoted to the case, and the qualifications of a number of attorneys who worked on the case. *See generally* Handy Decl. (dkt. 58-4). Handy asserts that he, Mark Potter, and Phyl Grace (each with more than twenty years of experience practicing law) are qualified to bill at $425 per hour, and that Christina Carson and Dennis Price[2] (both of whom graduated from law school in 2011) are qualified to bill at $350 per hour. *Id.* ¶¶ 7–11. Handy attaches billing records indicating that Arroyo's counsel incurred costs of $660—consisting of $200 for an investigator, $400 for the filing fee, and $60 for service—and fees totaling $13,002.50 for 33.4 hours of attorney time. *See id.* (attachment).

### E. Motion for Default Judgment

Arroyo moves for default judgment on his ADA and Unruh Act claims, seeking an injunction under the ADA and statutory damages under the Unruh Act. *See generally* Mot. (dkt.

---

[2] The paragraph addressing Dennis Price's qualifications neglects to include his billing rate, but the rate is apparent from the billing records attached to Handy's declaration. *See* Handy Decl. ¶ 11 & Attachment.

58-1). Arroyo seeks for $4,000 for his visit to the Store, an additional $4,000 for being deterred from visiting the Store when he was in the area the following week, and attorneys' fees totaling $13,002.50 (for a total monetary judgment of $21,002.50[3])

## III. ANALYSIS

### A. Legal Standard

After default has been entered against a party, a district court may grant an application for default judgment in its discretion. *See* Fed. R. Civ. P. 55(b)(2). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it then considers several factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917−18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### B. *Eitel* Factors

Several of the *Eitel* factors weigh in favor of granting default judgment simply by virtue of the fact that Defendants have not retained new counsel so that they can continue to participate in this action.[4] Arroyo will be left without a remedy, and therefore prejudiced, if default judgment is not granted. The sum of money at stake is justified under applicable statutes and is not excessive. Defendants had ample opportunity to retain new counsel after the Court issued the order to show cause, and there is no indication that their default is due to excusable neglect. Defendants could perhaps dispute some of the material facts if they participated in the case, but they have offered no

---

[3] Although the itemized billing summary attached to attorney Russell Handy's declaration includes $660 in litigation expenses, neither Arroyo's motion nor his proposed judgment includes that amount.

[4] As a trustee and a corporation, neither defendant can proceed without counsel. *See* Civ. L.R. 3-9; Order to Show Cause (dkt. 47).

4

evidence in their defense thus far and have shown no sign of resuming their defense. Finally, while there is a strong public policy favoring the resolution of disputes on the merits, that is not possible in this case because Defendants failed to retain new counsel in response to the Court's order to show cause and thus cannot participate in the case.

The remaining factors, "the merits of plaintiff's substantive claim" and "the sufficiency of the complaint," are intertwined where, as here, the case has not advanced significantly beyond the pleading stage and what little evidence has been submitted generally parallels the allegations of the complaint. As detailed below, the Court finds that these factors also favor granting default judgment.

### C. Arroyo Has Not Shown Entitlement to Injunctive Relief

"To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citing *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007). There is no question that Arroyo (who is paraplegic) is disabled or that the Store is a public accommodation. The question of whether Defendants currently own or operate the Store is problematic. Because the issue of whether Arroyo was denied accommodation also factors into his Unruh Act claim, this order addresses that question before returning to the issue of current ownership.

Failure to comply with the ADA Guidelines generally constitutes a denial of accommodation. *See, e.g.*, *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904–05 (9th Cir. 2011).[5]

---

[5] It is not clear from the record when parking lot at the Store was built or configured, but for "existing facilities," the ADA requires removal of barriers "'where such removal is readily achievable.'" *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(b)(1)(A)(iv). Courts have generally held that whether such removal is not readily achievable is an affirmative defense that is waived if not raised. *See, e.g.*, *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1133 & n.7 (E.D. Cal. 2007) (collecting authority). Here, to the extend that Defendants' answers raise such a defense, Defendants have not supported that defense with any evidence, and thus have not met their burden to show that compliance is not readily achievable.

5

The Ninth Circuit has "held that 'obedience to the spirit of the ADA' does not excuse noncompliance with the [Guidelines'] requirements," which "are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945–46 (9th Cir. 2011) (quoting *Long v. Coast Resorts, Inc.,* 267 F.3d 918, 923 (9th Cir. 2001)). The Guidelines require that a parking facility that, like the lot at the Store, has less than twenty-six parking spaces must have at least one "van parking space," which either must be at least 132 inches wide and adjacent to an aisle at least 60 inches wide, or must be at least 96 inches wide and adjacent to an aisle at least 96 inches wide. 36 C.F.R. Pt. 1191, App. B, §§ 208.2, 208.2.4, 502.2, 502.3, 502.3.1. The 120-inch parking space and 47-inch aisle,[6] *see* Wegman Decl. ¶ 4, provided at the Store do not comply with those requirements. Based on Arroyo's statement that he cannot safely and reliably enter and exit his wheelchair van in a space that does not satisfy the Guidelines' requirements for van-accessible spaces, *see* Arroyo Decl. ¶ 3, the Store's failure to provide Arroyo with such a space constitutes a denial of accommodation under the ADA.

Arroyo has not shown, however, that Defendants *currently* own or operate the Store. "An ADA claim for injunctive relief is moot if . . . the defendant no longer owns or controls the challenged premises." *Johnson v. Rai Rocklin Investments, LLC*, No. 2:15-CV-02698-KJM-EFB, 2017 WL 3421848, at *2 (E.D. Cal. Aug. 9, 2017). Although Arroyo's counsel researched the Store's ownership before filing the case (Handy Decl. ¶ 3), and Defendants admitted that they owned or operated the Store in their answers (Aldabashi Answer (dkt. 12) ¶¶ 2–3; Corporation Answer (dkt. 15) ¶¶ 4–5), nearly two years have elapsed since the case was filed, and it has been well over a year since Defendants answered the complaint. Arroyo's counsel conceded at the hearing that he had no evidence that Defendants currently own or operate the Store, and did not contest the Court's conclusion that injunctive relief should be denied on that basis. With no

---

[6] As previously noted, it is not clear that Wegman correctly measured from the centerlines of marking lines (or included the full width of the line marking the side of the aisle not adjacent to a parking space). The Court need not resolve that issue, as a difference of a few inches would not render the parking space and access aisle compliant with the Guidelines.

6

showing of current ownership, the Court declines to grant Arroyo judgment on his ADA claim for injunctive relief, and DENIES his motion as to that claim.

**D. Arroyo Is Entitled to Judgment and Damages on His Unruh Act Claim**

Under California law, a violation of the ADA also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f). A plaintiff is entitled to statutory damages of $4,000 under the Unruh Act for each instance where the plaintiff is denied equal access. *Id.* § 52(a). Such a denial occurs either: (1) "if the plaintiff personally encounter[s] the violation on a particular occasion" and "experience[s] difficulty, discomfort, or embarrassment because of the violation"; or (2) if "the plaintiff [is] deterred from accessing a place of public accommodation on a particular occasion," which requires a showing both that the "plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion" and that the violation "would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion." *Id.* § 55.56(a)–(d).[7]

Because a claim for damages under the Unruh Act looks to past harm, a change in ownership does not moot this claim. *See, e.g.*, *Johnson*, 2017 WL 3421848, at *2–3 (declining to dismiss an Unruh Act claim for damages after dismissing an ADA claim for injunctive relief as moot). While the Court could in its discretion decline to exercise supplemental jurisdiction over the state Unruh Act claim after dismissing the federal ADA claim, *see* 28 U.S.C. § 1367(c)(3), the Court elects to continue to exercise supplemental jurisdiction in the interest of efficiency, as the case has been sufficiently developed to grant judgment and requiring Arroyo to file a new complaint in state court would serve no purpose.

Arroyo states that he visited the Store, observed that no parking space satisfied the Guidelines and his needs, and experienced "difficulty as [he] could not safely park." Arroyo Decl. ¶¶ 5–6. Arroyo is therefore entitled to statutory damages for having "personally encountered the

---

[7] Under the statute, certain "technical violation are presume not to cause a person difficulty, discomfort, or embarrassment." Cal. Civ. Code § 55.56(e). Failure to provide a sufficiently wide van parking space and access aisle is not listed among those presumptively non-recoverable violations. *See id.*

7

violation" and "experienc[ing] difficulty" as a result. *See* Cal. Civ. Code § 55.56(b)–(c). Arroyo also states that he was deterred from visiting the Store on other occasions, including one particular instance when he was in the area a week after his first visit. Arroyo Decl. ¶ 8. Based on his visit to the Store a week prior, the Court is satisfied that Arroyo had "actual knowledge of [the] violation" sufficient to support statutory damages for having been deterred from returning. *See* Cal. Civ. Code § 55.56(d). Arroyo is therefore entitled to statutory damages for two instances where he was affected or deterred by the Store's failure to provide a van parking space, totaling $8,000.

### E. Arroyo Is Entitled to Attorneys' Fees

The Unruh Act allows a prevailing plaintiff to recover attorneys' fees and costs. Cal. Civ. Code § 52(a). The declaration of Russell Handy includes detailed records of the time that Arroyo's attorneys spent on this case, and the Court finds that both the total number of hours spent on the case (33.4) and the hourly billing rates for Arroyo's attorneys ($350 for lawyers with at least five years of experience when the case was filed, and $425 for lawyers with at least twenty years of experience) are reasonable and well supported. Arroyo is therefore entitled to the $13,002.50 in fees that he requests.

The billing summary attached to Handy's declaration also refers to $660 in litigation expenses. Because those costs are not referenced in Arroyo's motion, his proposed judgment, or Handy's declaration, the Court declines to award Arroyo more than he has requested, and does not reach the question of whether the $660 in costs is reasonable or could appropriately be included in a judgment.

## IV. CONCLUSION

For the reasons discussed above, Arroyo's motion for default judgment is GRANTED as to his Unruh Act claim but DENIED as to his ADA claim. The Clerk is instructed to enter judgment in Arroyo's favor in the amount of $21,002.50.

**IT IS SO ORDERED.**

Dated: October 15, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

8